# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| GREGORY G. SWEET,<br><br>   Plaintiff,<br><br>v.<br><br>TRANSAMERICA LIFE INSURANCE COMPANY,<br><br>   Defendant.<br><br>and Related Counter-claims and Cross-claims. | Case No. 2:10-cv-01383-LDG (RJJ)<br><br>**ORDER** |

   In 1999, G.G. Sweet purchased an annuity from Transamerica Life Insurance Company. In February 2008, G.G. designated Denise Sweet Sanford, Merrilyn L. Sweet, Beverly Sweet, Gregory G. Sweet, Suzanne H. Popple, Gary G. Sweet, Megan Hill, and Collin Hill as beneficiaries of his annuity. On June 16, 2010, G.G. executed a letter designating Gregory as the sole beneficiary of the annuity.

   Three days later, G.G. died of a self-inflicted gunshot wound.

   In July, 2010, Gregory informed Transamerica of G.G.'s death, and requested 100% of the annuity proceeds. Transamerica, however, sent a notice to each of the individuals

that G.G. had designated as a beneficiary in 2008. In August, 2010, Gregory brought this action against Transamerica, alleging claims arising from Transamerica's failure to pay him 100% of the proceeds of G.G.'s annuity. Transamerica filed a counterclaim to interplead the proceeds. The Court subsequently granted Transamerica's motions to interplead the annuity proceeds and to add, as parties, each of the 2008 beneficiaries.

Denise, Merrilyn, Gregory and Gary have each asserted, in this action, a right to at least a portion the annuity's proceeds.[1]

Transamerica now moves for summary judgment against the claims of Gregory (#77), and the counterclaims of Gary (#80). Gregory moves for summary judgment (#82) as against all other claimants to the proceeds and against Transamerica on each of his claims. The Court will grant the motions of Transamerica, but will deny the motion of Gregory.

Motion for Summary Judgment

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2) that the court may grant judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] Transamerica has represented that Beverly and the Estate of G.G. have indicated that they will not be asserting claims to the proceeds. In addition, neither Megan nor Collin filed answers and the Court has entered defaults against them.

2

1   A material fact is one required to prove a basic element of a claim.  *Anderson,* 477
2 U.S. at 248.  The failure to show a fact essential to one element, however, "necessarily
3 renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.
4   "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after
5 adequate time for discovery and upon motion, against a party who fails to make a showing
6 sufficient to establish the existence of an element essential to that party's case, and on
7 which that party will bear the burden of proof at trial."  *Id*.  "Of course, a party seeking
8 summary judgment always bears the initial responsibility of informing the district court of
9 the basis for its motion, and identifying those portions of 'the pleadings, depositions,
10 answers to interrogatories, and admissions on file, together with the affidavits, if any,' which
11 it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S.
12 at 323.  As such, when the non-moving party bears the initial burden of proving, at trial, the
13 claim or defense that the motion for summary judgment places in issue, the moving party
14 can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the
15 district court–that there is an absence of evidence to support the nonmoving party's case."
16 *Celotex*, 477 U.S. at 325.  Conversely, when the burden of proof at trial rests on the party
17 moving for summary judgment, then in moving for summary judgment the party must
18 establish each element of its case.
19   Once the moving party meets its initial burden on summary judgment, the non-
20 moving party must submit facts showing a genuine issue of material fact.  Fed. R. Civ. Pro.
21 56(e).  As summary judgment allows a court "to isolate and dispose of factually
22 unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the
23 evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H.*
24 *Kress & Co.*, 398 U.S. 144, 157 (1970).  The allegations or denials of a pleading, however,
25 will not defeat a well-founded motion.  Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co.*
26 *v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Background

The following facts are undisputed. G.G. purchased an annuity contract from Transamerica in 1999. The annuity provided that Transamerica would pay the beneficiary a lump sum benefit within one year of the death of the annuity's owner.

On February 18, 2008, G.G. requested Transamerica to change the beneficiaries and distribution of the annuity's proceeds as follows: 6% Denise (grand-niece), 6% Merrilyn (niece), 14% Beverly (daughter-in-law), 29.5% Gregory (grandson), 29% Suzanne (friend), 11.1% Gary (son), Megan (friend) 2.2%, and Collin (friend) 2.2%. On March 26, Transamerica informed G.G. that it had changed the beneficiary designation as he had requested.[2]

On June 16, 2010, G.G. executed a letter, dated June 14, 2010, requesting Transamerica to make a beneficiary change such that Gregory would receive 100% of the annuity's proceeds.

G.G. died of a self-inflicted gunshot wound to his head on June 19.

Transamerica received G.G.'s June 16, 2010, letter on June 22. On June 25, Transamerica sent G.G. a letter stating that "[i]n order to proceed with [the] request, the following information is needed: . . . Other: Please mention whether it is Primary Beneficiary or Contingent Beneficiary."

By letter dated July 6, Gregory informed Transamerica of G.G.'s death and stated: "[G.G.] held an annuity with your company and his wishes were to transfer the ownership of the above referenced account number to me, his grandson."

---

[2] G.G. originally designated only Beverly as a beneficiary of the annuity. In 2005, G.G. added Denise, Merrilyn, Gregory and Suzanne as beneficiaries.

4

On July 14, Transamerica mailed a letter to each individual that Transamerica listed as a beneficiary of the annuity.[3] The letters were sent to each individual that G.G. had designated as beneficiaries in February 2008. Each letter informed the intended recipient of "the current information on [the] annuity." This information included informing the individual that he or she was a primary beneficiary and indicated the relevant percentage of distribution. Enclosed with each letter was a claim form. The letters neither revealed the identity of or amount of distribution to any other beneficiary nor revealed Gregory's communication to Transamerica asserting that G.G.'s wishes were to transfer ownership of the annuity to him.

Transamerica also responded to Gregory's letter on July 14, stating that it had received his request. Transamerica further stated that, before Transamerica could process the request, Gregory needed to "clarify in a letter if you are contesting payment to the named beneficiaries." On July 19, Gregory responded (in a letter faxed to Transamerica):

> I am writing to formally contest payment to the named beneficiaries on the above referenced contract number. I am contesting the payment because I am under the belief, according to the wishes of the late Granville G. Sweet (my grandfather) that I am the full beneficiary of the above referenced contract.
> I have spoken to agents of your firm that have confirmed you have received proper documentation requesting the beneficiary transfer take effect. The stated reasons lead me to believe I am 100% beneficiary of the above referenced contract and the named beneficiaries should not receive payment.

On July 21, Transamerica responded that it had received his July 19, request. Transamerica further informed Gregory that because G.G.'s June 16, 2010, beneficiary designation "was not in good order no change was made to the contract and the previously made beneficiary designation remains in effect." The letter explained that G.G.'s

---

[3] By e-mail date July 16, Sherri Brown of Transamerica stated: "I processed this notify–I went by the benes listed currently as the bene change was not in good order per Legacy–Let me know if the bene change will be accepted and I will correct the letters."

5

beneficiary designation "did not specify whether the new beneficiary was to be a primary or a contingent beneficiary."

By letter dated August 3, 2010, Transamerica again sent Gregory a letter indicating that it had received notification of G.G.'s death, and that Gregory was a beneficiary of 29.5% of the annuity proceeds, which was valued at $959,536.49 as of June 19, 2010, and indicating that a claim form was enclosed.

By letter dated August 6, 2010, Gregory's lawyer wrote to Transamerica, informing the company that he had been retained to represent Gregory, asserting that Transamerica had refused to endorse G.G.'s June 16, 2010, beneficiary change, and further asserting that "Transamerica's position is without merit."

By letter dated August 11, 2010, Transamerica wrote to Gregory indicating it had received the letter from Gregory's counsel, and further stating that "[t]he claim will not be processed until all required paperwork is received in good order from each beneficiary."

Gregory filed the instant complaint on August 13, 2010.

Transamerica answered the complaint, filed a counterclaim for interpleader and declaratory judgment on September 24, 2010, and moved to join as additional parties the Estate of G.G. as well as each of the beneficiaries designated by G.G. in 2008. Transamerica further moved to interplead the proceeds of the annuity. The Court granted Transamerica's motions. Denise, Merrilyn, Gregory and Gary filed answers. The Court entered the defaults of Megan and Colin.

Analysis - Liability of Transamerica to Gregory

At issue in both Gregory's and Transamerica's motions is whether Transamerica is liable to Gregory or any of the other claimants independent of the respective claimants' entitlement to the proceeds of the annuity. "The purpose of interpleader is for the stakeholder to 'protect itself against the problems posed by multiple claimants to a single

6

fund.'" *Mack v. Kuckenmeister,* 619 F.3d 1010, 1024 (9th Cir.2010) (quoting *Minn. Mut. Life Ins. Co. v. Ensley,* 174 F.3d 977, 980 (9th Cir. 1999)); *see also Michelman v. Lincoln Nat'l Life Ins. Co.,* —— F.3d ——, 2012 WL 2855815, at *5 (9th Cir. 2012). "'The protection afforded by interpleader takes several forms. Most significantly, it prevents the stakeholder from being obliged to determine at his peril which claimant has the better claim . . ..'" *Lee v. West Coast Life Ins. Co.*, —— F.3d ——, 2012 WL 3089382, at *12 (9th Cir. 2012) (quoting Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d §1702 (2001)). This protection, however, "generally does not extend to counterclaims that are not claims to the interpleaded funds." *Id.,* at *13. As distilled into fundamental principles by the Ninth Circuit: "The stake marks the outer limits of the stakeholder's potential liability where the respective claimants' entitlement to the stake is the sole contested issue; however, where the stakeholder may be independently liable to one or more claimants, interpleader does not shield the stakeholder from tort liability, nor from liability in excess of the stake." *Id.,* at *16.

        A)        Propriety of Interpleader

The Court has previously determined that Transamerica properly brought its interpleader counterclaim, and Gregory's arguments to the contrary are without merit. As suggested in both *Lee* and *Prudential Ins. Co. of America v. Hovis,* 553 F.3d 258 (3rd Cir. 200), the question whether a stakeholder properly brought an interpleader is separate and distinct from whether the stakeholder is independently liable for conduct that caused the competing claims. In *Lee*, the claimants did not dispute that interpleader was unavailable to the insurer, but instead argued the insurer was nevertheless liable for its negligent action causing the controversy. *Lee,* at *17. In *Hovis*, the Third Circuit separately considered the question of whether the interpleader was properly brought from the question whether the claimant alleged claims outside the scope of the interpleader. 553 F.3d at 263-64. As recognized by the Supreme Court, "the mere existence of such a fund cannot, by use of

interpleader, be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund." *State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 533-34 (1967). Conversely, and implicit in this recognition, is that interpleader is properly employed when the protections of interpleader are limited to those necessary to the "orderly contest with respect to the fund." As explained by the Supreme Court, in the typical interpleader, "the fund itself is the target of the claimants. It marks the outer limits of the controversy. It is, therefore, reasonable and sensible that interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation." Thus, as interpleader protects the stakeholder from multiple litigation, but not from independent liability, determination of whether interpleader was properly brought remains a separate question whether the stakeholder is independently liable.

In the present matter, Transamerica properly brought the interpleader as it filed the interpleader in a counterclaim to a complaint brought by Gregory. Gregory (and not Transamerica) established that at least one claimaint to the annuity proceed's would resort to litigation to resolve entitlement to the fund. Further, the allegations of Gregory's complaint made plain that resolution of his claim of entitlement was necessarily in derogation of potential claims of entitlement by other persons. Gregory's complaint also made plain that Transamerica had not yet recognized Gregory's claim was superior to the claim of the other persons. Thus, as Gregory initiated the "orderly contest with respect to the fund," Tranasmerica could properly expand the scope of that contest to all potential claimants and, in doing so, receive protection from *multiple litigation with respect to the annuity's proceeds.*

   B)   Breach of Contract

Having determined that Transamerica properly brought its counterclaim for interpleader, the question remains whether Transamerica is independently liable to Gregory, or the other claimants, for damages other than the interpleaded funds. Gregory's

first claim for relief alleges that Transamerica breached the terms of the annuity contract. The claim is without merit and Transamerica is entitled to summary judgment on Gregory's breach of contract claim because Transamerica's alleged breach of contract liability to Gregory is not independent of his asserted entitlement to the annuity proceeds, the entirety of which Transamerica has interpled.

At the time Gregory filed his complaint, his breach of contract claim was premature. Gregory's complaint rests upon his allegation that Transamerica failed to *promptly* pay the entirety of the proceeds to him. Transamerica has shown, however, that the relevant term of the annuity contract provided Transamerica with one year to pay the annuity's benefits. Gregory offers no citation or argument suggesting that, when a contract expressly provides a party with one year to perform an obligation, the party is in breach of that obligation by failing to perform it within 36 days (which was the length of time between Gregory's first notification to Transamerica of G.G.'s death and his filing of this lawsuit). Thus, Gregory's claim was premature until either one year elapsed without paying any beneficiary or Transamerica paid a beneficiary other than Gregory.

Transamerica's subsequent interpleading of the proceeds both satisfied its obligation to pay the proceeds within a year and terminated any potential liability in contract that Transamerica may have owed to Gregory or any other beneficiary. As stated by the Third Circuit in *Hovis,* "where a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty." 553 F.3d at 265. Accordingly, Transamerica is entitled to summary judgment on Gregory's breach of contract claim.

B) Bad Faith

Gregory's claim for bad faith, as alleged in his complaint, fares no better than his claim for breach of contract, as it rests upon the bald (and incorrect) assertion that "[t]he

failure to pay a claim is sufficient to satisfy the 'denial' requirement." Gregory's Motion for Summary Judgment, at 12, l. 18. Gregory's citation to footnote 8 of *Pioneer Chlor Alkali Co., Inc. v. National Union Fire Ins. Co.,* 863 F.Supp. 1237, 1244 (D.Nev. 1994) not only does not support his assertion, but contradicts it. By itself, a failure to pay is not sufficient to satisfy the denial requirement; rather, a failure to pay for too long may satisfy the denial requirement in a bad faith claim. *Id.* Absent from any of Gregory's papers is any argument or citation to any authority suggesting that a failure to pay a claim within 36 days is too long, particularly when the underlying contract provided Transamerica with one year to make the payment.

The bulk of Gregory's papers argues an assertion not alleged in his complaint, that Transamerica acted in bad faith by interpleading the annuity proceeds.[4][5] Such bad faith, however, cannot rest upon the timeliness of Transamerica's actions, as it moved to interplead the funds within three months of Gregory's initial notice of G.G.'s death. Gregory suggests Transamerica acted in bad faith in filing the counter-claim for interpleader because it lacked a good faith or legitimate belief that there were adverse claimants to the annuity proceeds. He argues that Transamerica's belief that adverse claimants existed was solely the result of Transamerica's error in sending out notices to the 2008 beneficiaries. Gregory's arguments regarding the alleged bad faith by Transamerica in filing the complaint for interpleader fails for several reasons. First, as noted above, Transamerica properly filed the interpleader as a counterclaim in litigation initiated by Gregory to assert his claim of entitlement to the annuity's proceeds, which claim rested

---

[4] That Gregory's claim for bad faith did not allege bad faith in interpleading is unsurprising given that he not only initiated this lawsuit, but did so within 36 days of his initial notification of G.G.'s death. Thus, his complaint alleges conduct occurring before Transamerica had filed a complaint or counter-claim for interpleader.

[5] Gregory did assert, in his second affirmative defense of his answer to Transamerica's counter-claim for interpleader, that Transamerica was not an innocent stakeholder due to its negligence and bad faith.

10

upon allegations necessarily establishing that his claim was in derogation of potential claims by others.

Second, an adverse claimant's awareness of a potential claim is irrelevant to determining whether an interpleader had a legitimate and good faith belief of the possibility of multiple actions.  As in *Hovis*, Gregory's argument rests upon the strange idea that the controversy underlying the interpleader resulted from Transamerica's failure to pay him before the 2008 beneficiaries became aware of G.G.'s death and their potential claim to the annuity's proceeds, rather than the circumstances resulting from G.G's act of taking his own life three days after executing a beneficiary change.

Third, and finally, the record in this matter precludes the Court from finding that the 2008 beneficiaries lack <u>any</u> non-frivolous, adverse claim challenging the validity of G.G.'s June 16, change request.  While Gregory dismisses Transamerica's references to G.G.'s state of mind as a smokescreen and a post-hoc excuse, entirely absent from any of his papers is any argument that G.G.'s state of mind at the time he executed the June 16, change request, or the other circumstances surrounding his beneficiary change and self-inflicted death three days later, will be irrelevant to this Court's determination of the validity of that beneficiary change request in determining the competing adverse claims to the annuity's proceeds.  Also absent from Gregory's papers is any suggestion that the undisputed facts that G.G. shot himself in the head three days after executing the change request does not raise a material issue of triable fact relevant to G.G.'s state of mind. Regardless of whether Transamerica reached this conclusion prior to Gregory's filing of his lawsuit, or even prior to filing the counter-claim for interpleader, Gregory initiated this action and by that process brought to the attention of this Court that the 2008 beneficiaries have at least one legitimate basis upon which they can challenge the validity of G.G.'s June 16, change request.  Gregory cannot obtain damages against Transamerica, including attorney's fees, incurred as the result of having to litigate legitimate adverse claims

unrelated to any conduct of Transamerica, but arising from the conduct of G.G. Accordingly, Transamerica is entitled to summary judgment on Gregory's claim of bad faith.

C.   Negligence

In moving for summary judgment, Transamerica argues that Gregory cannot recover any damages on his negligence claim under the economic loss doctrine. The Ninth Circuit has summarized the economic loss doctrine as applied in Nevada as follows:

> Broadly speaking, Nevada applies the economic loss doctrine to bar recovery in tort for purely monetary harm in product liability and in negligence cases unrelated to product liability. Nevada law may also bar recovery for other tort claims where the plaintiff's only complaint is that the defendant failed to perform what was promised in the contract. But it does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff.

Transamerica argues that summary judgment is appropriate on the negligence claim as Gregory seeks as damages the loss of the annuity's proceeds, which are the same damages Gregory seeks in his breach of contract claim.

In opposition, Gregory argues that his "negligence claim in this case includes damages for the (then anticipated) attorney's fees and costs of litigation he has and will incur in litigating this case with the other parties named in the interpleader action. . . ." He further asserts that these type of damages are not recoverable under a breach of contract, and thus not barred by the economic loss doctrine.

Gregory's argument fails for several reasons. First, to accept his argument would be to completely eviscerate the economic loss doctrine, which is "to shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." *Terracon Consultants Western, Inc. v. Mandalay Resort Group*, 125 Nev. 66, 86-87 (2009). The economic loss doctrine does not, as plaintiff suggests, establish that when an economic loss cannot be recovered in a contract action in may be recovered in a

1 negligence action. Rather, the policy underlying the economic loss doctrine is precisely the
2 contrary; "The economic loss doctrine draws a legal line between contract and tort liability
3 that forbids tort compensation for 'certain types of foreseeable, negligently caused,
4 financial injury.'" *Id.,* at 75, (quoting *Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 52
5 (1st Cir.1985)). Gregory has not alleged or shown personal injury or property damage, and
6 has not shown that his allegations fall within an exception to the economic loss doctrine
7 that is recognized by Nevada.

8 Second, Gregory's argument fails for the same reason his breach of contract and
9 bad faith claims fail; the claim was premature when brought and, to the extent the claim
10 ripened due to subsequent events, it is without merit. As established by Gregory's own
11 argument and the allegations of his complaint, he concedes that (at the time he filed his
12 complaint) his asserted basis for damages was an assumption regarding future events. In
13 short, Gregory concedes that his claim for damages had not accrued when he filed the
14 complaint, but rested upon his prediction that he would have to defend an action that was
15 the consequence of Transamerica's negligence.

16 Third, Gregory has not shown that, in the interpleader action, he must litigate against
17 adverse claims that are a but-for consequence of an alleged act of negligence by
18 Transamerica. The tort of another doctrine does not provide that a plaintiff may recover
19 from another the attorney's fees incurred as a result of suing a third party or defend a suit
20 brought by or involving a third party. Rather, the tort of another doctrine allows, as
21 damages, attorney's fees incurred because the defendant's tortious conduct required the
22 plaintiff to sue or defend a third-party action. Thus, Gregory's claim cannot rest simply
23 upon a showing that the 2008 beneficiaries are litigating entitlement to the annuity
24 proceeds. Rather, he must show that the adverse claimants have asserted that, as a
25 consequence of an act by Transamerica, they have an entitlement to the annuity proceeds.
26 None of the adverse claimants have asserted that they are entitled to the annuity proceeds

13

because Transamerica mailed the July 14, notice. None of the adverse claimants have asserted that they are entitled to the annuity proceeds because Transamerica did not record G.G.'s beneficiary change request. Accordingly, summary judgment in favor of Transamerica is appropriate as to Gregory's claim for negligence.

D) Nevada Unfair Insurance Practices Act, NRS §686.310(1)(b), (c), (e) and (f)

Assuming that the cited sections of the Nevada Unfair Insurance Practices act apply to Transamerica's handling of G.G.'s change of beneficiary request and Gregory's subsequent notice of G.G's death and his assertion of a right to the entirety of the annuity's proceeds, this claim fails for the same reasons Gregory's other claims fail. As asserted by Gregory in opposition, "the company is obligated to . . . **pay claim in a timely manner.**" Opposition, at 14. The record establishes, however, that Gregory filed his suit within 36 days of his first notice to Transamerica of G.G.'s death. While Gregory asserts that Transamerica violated Nevada's Unfair Insurance Practices Act by failing to pay in a timely manner, he offers no citation to any authority, from any jurisdiction, suggesting that, a failure to pay in a timely manner had occurred with 36 days of his first notice of G.G.'s death and his assertion of a right to the entire proceeds of the annuity. Further, the circumstances of this case--G.G.'s change of beneficiary followed by G.G.'s act of taking his own life three days later–require a finding as a matter of law that Transamerica's liability to pay Gregory 100% of the annuity's proceeds had not become reasonably clear within the brief 36-day period before Gregory filed this lawsuit. Transamerica is entitled to summary judgment on Gregory's statutory Unfair Insurance Practices claim.

Liability of Transamerica to Gary

In addition to seeking summary judgment against Gregory, Transamerica also filed a motion for summary judgment. Gary has appeared in this matter *pro se*, and as such the Court has liberally construed his pleadings and papers. A review of the counterclaims alleged by Gary is, at best, ambiguous as to whether the counterclaims were brought

14

against Transamerica or against Gregory. A review of Gary's opposition to Transamerica's motion indicates that his counterclaims were directed toward the conduct of Gregory, rather than any conduct of Transamerica. Accordingly, the Court will grant summary judgment in favor of Transamerica.

<u>Gregory's Motion for Summary Judgment as Against Adverse Claimants</u>

As the Court is granting summary judgment in favor of Transamerica against Gregory's claims, it will deny Gregory's motion to the extent it seeks summary judgment on his claims against Transamerica.

However, to the extent that Gregory, by his motion, seeks a determination as a matter of law that he is entitled to 100% of the proceeds of the annuity, the Court will deny the motion at this time.

Instead, the Court will set this matter for a case management hearing at which it will require the attendance of all adverse claimants or their counsel, including Gary, Denise, and Merrilyn, as well as Gregory or his counsel. As the record indicates that Gary, Denise, and Merrilyn are currently representing themselves in this matter, and as the record further indicates that the office of Gregory's counsel is in Los Angeles, the Court will allow all parties to appear telephonically.

Therefore, for good cause shown,

THE COURT **ORDERS** that Transamerica Life Insurance Company's Motion for Summary Judgment (#77) is GRANTED;

THE COURT FURTHER **ORDERS** that Transamerica Life Insurance Company's Motion for Summary Judgment (#80) is GRANTED;

THE COURT FURTHER **ORDERS** that Gregory Sweet's Motion for Summary Judgment (#82) is DENIED;

THE COURT FURTHER **ORDERS** that Gregory Sweet's Motion to Strike (#102) is DENIED;

1  THE COURT FURTHER **ORDERS** that it will hold a case management hearing on this matter on September 17, 2012, at 10:00 a.m., in Courtroom 6B, 333 Las Vegas Blvd So, Las Vegas Nevada.  All parties, including Gary Sweet, Denise Sweet, and Merrilyn Sweet, may appear telephonically by calling 702-868-4904 and entering in the code: 123456 and waiting for the court to connect to the call. Please note that the calls must be made from a land line only.  Further, the Court would request that the parties appearing telephonically place their calls beginning at 9:55 a.m. to ensure that all are connected to the conference call prior to the start of the hearing at 10:00 a.m.

DATED this ___30___ day of August, 2012.

_____
Lloyd D. George
United States District Judge